IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANNMARIE L. MAHNKE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____ | No. 1:16-cv-00060-LRR<br><br><br>**REPORT AND RECOMMENDATION** |

　　　　Plaintiff Annmarie Mahnke seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 1381-1385. Mahnke contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled because the ALJ failed to consider whether her various mental impairments met or equaled Listing 12.05. The court recommends that this matter be remanded to the Social Security Administration for further proceedings.

## *I.  BACKGROUND*

　　　　Mahnke suffers from several mental health impairments, including anxiety, depression, and schizoaffective disorder. AR 12, 73, 309, 311, 536-39.[2] She also has

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] "AR" refers to the administrative record below.

problems with anger management and interacting with unfamiliar people. AR 15-16, 289, 333, 538-39. Mahnke completed school through the ninth grade and dropped out when her mother was diagnosed with cancer. AR 49-50, 331. While in school, she took special education classes. AR 204, 306. From ages 10 to 18, Mahnke received disability benefits. AR 200. She has no relevant past work experience. AR 19.

In November 2009, when Mahnke was 18 years old, Dr. Harlan Stientjes administered the Wechsler Adult IQ test to Mahnke. AR 305-06. Dr. Stientjes determined that Mahnke had a verbal comprehension index IQ of 72, a perceptual reasoning index IQ of 86, a working memory index IQ of 69, a processing speed index IQ of 76, and a full scale IQ of 72. AR 307-08. As part of his overall evaluation of Mahnke's mental health, Dr. Stientjes noted "significant difficulties" in adaptive behavior because of "a functional lack of training" rather "than only limitations." AR 308.

Currently, Mahnke lives with her boyfriend and is able to make sandwiches and frozen meals, wash dishes, do laundry, and take out the garbage. AR 13, 41, 50, 240, 264. She manages her personal hygiene and grooming without any help but may sometimes need reminders. AR 13, 263. She reads and writes at a second-grade level and often needs someone to read or explain instructions to her. AR 13, 15, 46, 222, 251, 256. She sometimes has difficulties paying attention. AR 13, 18, 251. She likes sewing, movies, and going on bike rides, and she occasionally watches television all day. AR 15, 45, 250. She does not drive. AR 42, 265. She is able to accompany her boyfriend to the store, but it is unclear whether she does any shopping alone. AR 13, 18-19, 42, 212, 241, 249, 265, 332. She needs someone to remind her to take her medication every day. AR 211, 219, 240, 248, 264. She had delivered a baby seven days prior to the hearing and was caring for the newborn during the day by herself. AR 15, 41, 50.

2

Mahnke filed an application for SSI on May 25, 2012. AR 226. The Commissioner denied Mahnke's application initially and upon reconsideration. AR 101-05, 108-11. Mahnke then requested a hearing before an ALJ. AR 10. After a hearing at which Mahnke and a vocational expert testified, the ALJ issued a written opinion, denying Mahnke's request for benefits. AR 10-21. On February 26, 2016, the Appeals Council denied Mahnke's request for review. AR 1-6. The ALJ's decision is thus the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On April 27, 2016, Mahnke filed a complaint in this court.[3] Doc. 3. The parties briefed the issues, and the Honorable Linda R. Reade, District Judge for the Northern District of Iowa, referred this case for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE ALJ'S FINDINGS

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner must follow a five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); 20 C.F.R. § 416.920(a). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity (i.e. whether the claimant has a job). 20 C.F.R. § 416.920(a)(4)(i). Second, the Commissioner determines "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *see also* 20 C.F.R. § 416.920(a)(4)(ii). Third, the Commissioner determines whether the claimant's impairment or combination of impairments meets or equals one of the listings of presumptively disabling impairments set forth at 20 C.F.R. part 404, subpart P, appendix

---

[3] This action is timely. *See* 20 C.F.R. § 422.210(c); *see also Sheehan v. Sec'y of Health, Educ., & Welfare*, 593 F.2d 323, 324 & n.2 (8th Cir. 1979).

1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments meet or equal a listing, that ends the inquiry: the claimant is disabled and entitled to benefits. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). During the fourth and fifth steps, the Commissioner determines whether the claimant is disabled despite failing to meet or equal a listing by evaluating the claimant's residual functioning capacity, or "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)); *see also* 20 C.F.R. § 416.920(a)(4)(iv), (v). The claimant is not disabled if she can still perform her past work (step four) or if she can perform other work that exists in significant numbers in the national economy (step five). *See Dixon*, 353 F.3d at 605; 20 C.F.R. § 416.920(a)(4)(iv), (v).

In determining whether Mahnke was entitled to benefits, the ALJ followed the five-step process. First, the ALJ found that Mahnke had not engaged in substantial gainful activity since May 25, 2012. AR 12. Second, the ALJ determined that Mahnke had the following severe impairments: organic mental disorder, schizoaffective disorder, affective disorder, and anxiety disorder. AR 12. At the third step, the ALJ concluded that Mahnke's impairments did "not meet or medically equal the criteria of listings 12.02, 12.03, 12.04, and 12.06." AR 13. In connection with that analysis, the ALJ determined that Mahnke had "mild restrictions" in activities of daily living; "moderate difficulties" in social functioning; and "moderate difficulties" with concentration, persistence, and pace. *Id.* The ALJ did not specifically address Listing 12.05 nor Mahnke's borderline IQ score during step three. AR 12-14.

At the fourth step, the ALJ determined that Mahnke "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could do simple, routine tasks and she could have only short-lived superficial contact with the public, coworkers, and supervisors." AR 14. In

4

her analysis of Mahnke's residual functioning capacity, the ALJ noted that disability reports stated that "claimant had a low IQ." AR 14-15. The ALJ also took into account the 2009 opinion of Dr. Stientjes, assigning it "some weight." AR 15-16. The ALJ noted that Dr. Stientjes determined Mahnke had an IQ of 72 and that he found Mahnke faced "significant difficulties" in adaptive behavior from a "functional lack of training." AR 15-16. During the fifth step, the ALJ determined that a significant number of jobs existed in the national economy that Mahnke could perform, including laundry worker, kitchen helper, and cleaner. AR 19-20.

### III. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707.

When determining whether substantial evidence supports the ALJ's decision, the court considers all the evidence before the ALJ but "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994); *accord Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court "must search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). The court must "evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992). In other words, substantial evidence may support the ALJ's decision "even if [the court] might have weighed the evidence differently." *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). "The concept of substantial evidence . . . embodies a zone of choice within which the [ALJ] may decide to grant or deny benefits without being subject to reversal on appeal." *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988).

## IV. DISCUSSION

Mahnke challenges only the ALJ's failure to address during the third step of analysis whether her impairments are equivalent to Listing 12.05C for intellectual disability.[4] An impairment or combination of impairments is equivalent to a listing if the claimant "present[s] medical findings equal in severity to *all* the criteria for the one most similar listed impairment," not if "the overall functional impact of [the] unlisted impairment . . . is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. At the time of the ALJ's decision, a claimant met Listing 12.05C by demonstrating (1) a verbal, performance, or full scale IQ of 60 to 70; (2) a "physical or other mental

---

[4] The Social Security Administration changed the requirements to meet Listing 12.05 and eliminated Listing 12.05C effective January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138, 66167 (Sept 26, 2016) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1). The new criteria of Listing 12.05 do not apply, however, to claims pending review in the federal courts decided by the Social Security Administration before January 17, 2017. *See id.* at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003) (applying listing in effect at the time of the ALJ's decision when the Social Security Administration stated in the Federal Register that the new listing did not apply to claims pending judicial review in federal court).

impairment imposing an additional and significant work-related limitation of function"; (3) deficits in adaptive functioning, and (4) onset of the impairment before age 22. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C (2016); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010) (per curiam). Mahnke admits that her IQ of 72 falls outside the requirements to meet Listing 12.05C, but argues that her borderline IQ, in combination with her other impairments, is equal in severity to an IQ between 60 and 70. The Commissioner disagrees. The Commissioner also responds that even if the ALJ erred in failing to consider Listing 12.05C, the court should nevertheless affirm the ALJ's decision because the overall record demonstrates that Mahnke cannot meet or equal Listing 12.05C's requirement of deficits in adaptive functioning.

### A. *Whether the ALJ erred by failing to consider Listing 12.05C*

As a preliminary matter, both parties proceed on the assumption that Mahnke has an IQ of 72, but the ALJ never explicitly made a finding regarding Mahnke's IQ. The ALJ recognized that Dr. Stientjes had determined in 2009 that Mahnke had a full scale IQ of 72. AR 15-16, 306-09. The ALJ, however, assigned only "some weight" to Dr. Stientjes's overall assessment of Mahnke, noting that his evaluation occurred more than five years prior and did not take into account current life events. AR 15-16, 306-09. In addition, the ALJ did not list borderline intellectual functioning as a severe impairment during step two of the analysis (AR 12)—an impairment that describes those with IQs between 71 and 84. *See Thomas v. Sullivan*, 876 F.2d 666, 668 n.1 (8th Cir. 1989). Nevertheless, the court assumes Mahnke's IQ is 72. A claimant's "IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). Moreover, the ALJ did not explicitly reject Dr. Stientjes's calculation of Mahnke's IQ, nor explain the basis for such a rejection. *See Chunn v. Barnhart*, 397 F.3d 667, 671-72 (8th Cir.

7

2005) (holding that the record did not support the ALJ's failure to address Listing 12.05C when a psychologist had determined claimant had an IQ below 70, and the ALJ noted some discrepancies in the psychologist's report but "did not explicitly reject the psychologist's opinion" regarding IQ, "much less explain why her opinion should not be relied on").

The Eighth Circuit has recognized that an ALJ should consider the Programs Operations Manual System (POMS) guidelines when determining whether a claimant's impairments are medically equivalent to Listing 12.05C. *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015). The POMS guidelines state that although "a medical equivalence determination would very rarely be required" for Listing 12.05C, "slightly higher [IQs] (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." *Id.* [emphasis omitted] (quoting POMS § DI 24515.056). Mahnke argues that her IQ of 72, combined with her other mental impairments (organic mental disorder, schizoaffective disorder, affective disorder, and anxiety disorder), is medically equivalent to an IQ of 60 to 70, and that the ALJ thus erred by failing to address Listing 12.05C.

More than once, the Eighth Circuit has reversed an ALJ's decision for failure to consider the POMS guidelines when the claimant's IQ fell just outside the 60 to 70 range, and the claimant had other severe impairments. In *Hesseltine*, the Eighth Circuit held that substantial evidence did not support the ALJ's conclusory finding that the claimant's impairments did not medically equal Listing 12.05C when the claimant had an IQ of 72 and suffered from three additional severe impairments: Perthes disease of the left hip, polycystic ovarian syndrome, and obesity. *Id.* at 445, 466. The court remanded the case to the Social Security Administration for further proceedings. *Id.* In *Shontos v. Barnhart*, 328 F.3d 418, 424, 427 (8th Cir. 2003), the court reversed for an award of

8

benefits after determining that the claimant's IQ of 72, combined with her anxiety, dependency, depression, and degenerative joint disease, was medically equivalent to an IQ of 60 to 70.[5] In both *Hesseltine* and *Shontos*, the court specifically noted the ALJ's failure to mention the POMS guidelines. 800 F.3d at 466; 328 F.3d at 424. Courts in the Northern District of Iowa have also reversed ALJs' decisions for failure to address medical equivalence to Listing 12.05C when the claimant had a borderline IQ between 71 and 75, in addition to other severe impairments (such that the POMS guidelines were applicable). *See, e.g.*, *Shelton v. Colvin*, No. 14-CV-0122-LRR, 2016 WL 916431, at *6, *8 (N.D. Iowa Mar. 10, 2016) (claimant's other severe impairments included degenerative disc disease of the lumbar spine, asthma, and depression); *Wise v. Colvin*, No. C12-2047, 2013 WL 2243875, at *10-12 (N.D. Iowa May 21, 2013) (claimant's other severe impairments were ADHD, depression, anxiety, patellofemoral syndrome, and a recent ACL repair); *Childers v. Astrue*, No. C12-2015, 2013 WL 54017, at *7-9 (N.D. Iowa Jan. 3, 2013) (claimant's other severe impairments were depression and anxiety).

Mahnke's IQ of 72, in conjunction with her other severe mental impairments, could be found to medically equal the severity of an IQ between 60 and 70. Because the ALJ failed to address whether Mahnke's impairments were medically equivalent to Listing 12.05C, the ALJ erred. *See Hesseltine*, 800 F.3d at 466. The court addresses whether this error requires reversal in the next section.

---

[5] *See also Thomas*, 876 F.2d at 670 (reversing the ALJ's decision and awarding benefits because claimant's "borderline intellectual functioning, poor physical condition, and mental illness combine to disable her"); *cf. Phillips v. Colvin*, 721 F.3d 623, 631-32 (8th Cir. 2013) (holding that the claimant's IQ of 72 was not medically equivalent to an IQ between 60 and 70 when the ALJ determined the claimant's only severe impairment was borderline intellectual functioning).

9

### B. *Whether the overall record demonstrates that Mahnke cannot prove medical equivalence to Listing 12.05C*

The failure to address a specific listing is not reversible error as "long as the record otherwise supports the ALJ's overall conclusion." *Igo v. Colvin*, 839 F.3d 724, 728-29 (8th Cir. 2016) (quoting *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016)). "Thus, [the court] will uphold the ALJ's decision so long as 'substantial evidence in the record support[s] the ALJ's determination.'" *Id.* (quoting *Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011)). When the ALJ's "decision d[oes] not adequately account for . . . inconsistencies in the medical evidence," however, the court is "unable to determine whether substantial evidence on the record as a whole supports" the ALJ's decision, and the case must be remanded. *Brown*, 825 F.3d at 940; *see also Chunn*, 397 F.3d at 672; *cf. Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [a claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

The Commissioner argues that the ALJ's decision should be affirmed because Mahnke's impairments cannot meet or equal two of the requirements of Listing 12.05C: an IQ below 70 and deficits in adaptive functioning. The record shows otherwise.[6] As

---

[6] There is ample evidence in the record that Mahnke's impairment began before age 22; indeed, the ALJ noted that Mahnke had a "long history" of mood swings, anxiety, and anger issues beginning before age 18 and that she was 18 when she took the IQ test revealing a full scale IQ of 72. AR 15-16, 306-08, 311-12. Moreover, with regard to the requirement of an additional impairment, the ALJ determined that Mahnke suffered from organic mental disorder, schizoaffective disorder, affective disorder, and anxiety disorder and that these severe impairments caused "more than minimal limitations in the claimant's ability to perform basic work activities." AR 12. This finding is sufficient to satisfy the second element necessary to meet listing 12.05C. *See Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997) ("[T]he second prong of § 12.05(C) is met when the claimant has a physical or additional mental impairment that has a 'more than slight or minimal' effect on his ability to perform work." (quoting *Cook v. Bowen*, 797 F.2d 687, 690 (8th Cir. 1986))).

10

discussed above, the court cannot say on this record that the ALJ would not have found Mahnke's impairments equal the severity of an IQ between 60 and 70 had the ALJ considered the issue. Whether the ALJ's decision forecloses a finding of deficits in adaptive functioning presents a closer issue.

The regulations do not define "deficits in adaptive functioning." The Social Security Administration purposefully chose not to define the term because "the method of measuring the required deficits in adaptive functioning differ[s] among" the four major professional organizations to define intellectual disability. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018, 20022 (Apr. 24, 2002). The Social Security Administration allows the use of any of the four organization's definitions. *Id.* For example, one definition requires "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Id.* (quoting American Psychiatric Association (APA), Diagnostic and Statistical Manual of Mental Disorders (DSM) 39 (4th ed. 1994)).

When evaluating deficits in adaptive functioning, the Eighth Circuit has considered a claimant's ability to perform activities of daily living, such as grooming, housework, and meal preparation; as well as a claimant's communication skills; social relationships; and limitations in concentration, persistence, or pace. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015); *Cheatum*, 388 F. App'x at 576-77; *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). A claimant may still have deficits in adaptive functioning, however, even if able to perform "rudimentary activities of daily living" or "'achieve social and vocational skills adequate for minimum self-support.'" *Lott v. Colvin*, 772 F.3d 546, 551 & n.4 (8th Cir. 2014) (quoting APA, DSM 43 (4th ed., text rev. 2000)).

11

The Commissioner argues that even though the ALJ did not address deficits in adaptive functioning, the ALJ's discussion of the evidence in connection with determining marked limitations (in step three) and residual functioning capacity (in step four) precludes a finding that Mahnke suffered deficits in adaptive functioning. The ALJ found that Mahnke had mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, or pace; but not marked or extreme difficulties in those categories. AR 13. A claimant need not suffer from any marked or extreme limitations to satisfy Listing 12.05C. *Contreras v. Astrue*, No. CIV 08-1196, 2009 WL 5252828, at *10 (D. Minn. Aug. 26, 2009) (noting that Listing 12.05D would be redundant if Listing 12.05C required a finding of marked limitations, and holding that the overall record demonstrated claimant's deficits in adaptive functioning when the ALJ found only mild to moderate limitations). Neither does the ALJ's determination of Mahnke's residual functioning capacity preclude a finding of deficits in adaptive functioning for purposes of Listing 12.05C. *See Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at *10 (E.D.N.C. Nov. 15, 2013). The court therefore considers the overall record with a particular emphasis on the evidence given weight by the ALJ.

The ALJ assigned "some weight" to Dr. Stientjes's assessment of Mahnke. AR 15-16. Dr. Stientjes found that the evidence of Mahnke's "adaptive behavior suggest[s] significant difficulties," due to "more of a functional lack of training than only limitations." AR 16, 308. The ALJ noted that Mahnke reported being able to make sandwiches and frozen meals, wash dishes, do laundry, and take out the garbage; and that previously she had reported being able to make complete meals, water plants, mow, and attend to her personal hygiene and grooming needs. AR 13, 41, 240, 263-64. The

ALJ also noted that Mahnke's mother reported Mahnke was able to pay bills, count change, handle a savings account, and use a checkbook. AR 18-19, 249. The ALJ put great stock in Mahnke's ability to care for her newborn by herself during the day, which she had been doing for seven days at the time of the hearing.[7] AR 15-16, 18, 41, 50. The ALJ found that although there was some evidence that Mahnke could pay attention for only ten to twenty minutes, she could prepare simple meals and watch television, "which . . . takes some ability to focus and concentrate." AR 13, 18, 251, 263-64, 267. The ALJ also noted that Mahnke reported having trouble being around new people, although she enjoyed hanging out with friends, family, and her boyfriend at home. AR 13, 18, 49, 213, 262. The ALJ recognized that Mahnke was occasionally able to go out in public when accompanied by someone, but did not resolve inconsistencies in the record regarding the frequency with which Mahnke left her house nor her ability to run errands by herself. AR 13, 18-19, 42, 212, 220, 241, 249, 265, 332. The record also contains inconsistencies regarding Mahnke's ability to take public transportation. AR 212, 220, 241, 249, 265, 332. The ALJ recognized that Mahnke's mother reported she reads and writes at a second-grade level. AR 14-15, 256. Mahnke has difficulty following written instructions but is able to follow simple oral instructions. AR 13, 46, 222, 251. The ALJ also recognized that Mahnke has a history of mood swings and anger issues. AR 15, 289, 311. Although not mentioned in the ALJ's decision, each of Mahnke's function reports state that she does not drive and that she needs help or reminders taking her medication. AR 42, 211-12, 219-20, 240-41, 248-49, 264-65.

---

[7] The ability to care for children does not preclude a finding of deficits in adaptive functioning. *See Shontos*, 328 F.3d at 420, 427 (holding that claimant's impairments were equivalent to listing 12.05C despite her ability to babysit for her granddaughter).

13

On this record, the court cannot say whether substantial evidence supports that Mahnke does not have deficits in adaptive functioning. Although the ALJ found that Mahnke is capable of doing many household chores independently, a finding that Mahnke has deficits in adaptive functioning could be made based on her difficulties interacting with strangers, her concentration and memory problems, and her inability to follow written instructions, to go shopping alone, to drive, and to take public transportation. *See Hesseltine*, 800 F.3d at 463, 466 (although not specifically addressing the claimant's deficits in adaptive functioning, holding that remand was required when the ALJ failed to address Listing 12.05C where the claimant could clean, mow, do laundry, prepare meals, and go shopping, but had trouble counting change and suffered from physical impairments). Accordingly, this case must be remanded to the Social Security Administration for the Commissioner to address in the first instance whether Mahnke's impairments are equivalent to Listing 12.05.

## V. CONCLUSION

The court recommends that the district court enter judgment in favor of Mahnke, reverse the decision of the Commissioner, and remand this case to the Social Security Administration for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of the service of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from

the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 6th day of June, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa